2026 IL App (1st) 250567-U

No. 1-25-0567

First Division
June 30, 2026

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| P-THREE DEVELOPMENT, LLC, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | No. 2021 L 000011 |
| THERM FLO, INC.; ZONATHERM | ) | |
| PRODUCTS, INC.; N+2, LLC; NETRIX | ) | Honorable |
| BUILDING, LLC; CYBER WORKPLACE | ) | Thomas More Donnelly, |
| RECOVERY SERVICES, LLC; EMP | ) | Judge, Presiding. |
| TECHNOLOGY HOLDINGS, LLC; AOP | ) | |
| INVESTMENTS, LLC; CYBER | ) | |
| INNOVATION LABS, LLC; NETWORK | ) | |
| AND MANAGED HOSTING SERVICES, | ) | |
| LLC; NETWORK AND MANAGED | ) | |
| HOSTING SERVICES-IL, LLC; CDGI NAP | ) | |
| SERVICES, LLC; INFRASTRUCTURE | ) | |
| STRATEGIES GROUP, LLC; 2005 AOP | ) | |
| FAMILY TRUST; JOHN H. PRESSMAN | ) | |
| a/k/a JACK PRESSMAN; and the | ) | |
| "OMNIBUS PARTNERSHIP"; | ) | |
| | ) | |
| Defendants-Appellees, | ) | |
| (Ravi K. Kadiyala, Intervenor-Appellant). | ) | |

_____

JUSTICE COBBS delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Howse concurred in the judgment.

**ORDER**

¶ 1  *Held*:  Intervenor-appellant's brief is hereby stricken, and the appeal is dismissed for failure to comply with Illinois Supreme Court Rule 341.

¶ 2  Intervenor-appellant Ravi K. Kadiyala sought to intervene in the underlying litigation between P-Three Development, LLC (P-Three) and defendant-appellee Therm Flo, Inc., pursuant to section 2-408(a)(3) of the Code of Civil Procedure (735 ILCS 5/2-408(a)(3) (West 2024)). Kadiyala now appeals the circuit court's denial of his request for intervention. For the reasons that follow, Kadiyala's brief is hereby stricken and the appeal dismissed.

¶ 3                                          I. BACKGROUND

¶ 4  Although we ultimately dismiss this appeal, we deem it necessary to set out in some detail the course and substance of the proceedings in the lower court. The facts that follow have been gathered from relevant portions of the 17 volumes and more than 15,000 pages which comprise the common law record.

¶ 5  This litigation has as its genesis the purchase of equipment and materials from two adjacent, but separate, data centers, one identified as the 1221 site and the other as the 1331 site, located in Mount Prospect, Illinois. In 2011, Therm Flo, Inc., and Zonatherm Products, Inc. (collectively, Therm Flo) entered into several contracts with Cyber Workplace Recovery Services (CWRS), Emp Technology Holdings LLC (EMP), and related entities, controlled by John H. Pressman, a/k/a John Pressman, and Anna Pressman (collectively, the Pressman defendants), for services and equipment related to the 1221 data center. The Pressman defendants failed to make the payments required under those agreements, and in October 2013, Therm Flo sued and won a judgment against the Pressman defendants for, *inter alia*, breach of contract. The parties subsequently negotiated a settlement whereby the Pressman defendants agreed to pay Therm Flo

$1 million and additionally executed a $350,000 promissory note, secured by equipment located at the centers. The terms of the agreement were detailed in the "Settlement Agreement" and the "Secured Settlement Note" (Settlement Note), dated July 24, 2014.[1]

¶ 6    In December 2015, P-Three purchased the data center located at the 1221 site. Notably, Kadiyala was, at all times relevant, P-Three's sole manager and sole employee. To finance the acquisition, Kadiyala borrowed approximately $4.2 million from T2 Capital LLC (T2), secured by a mortgage on the property and equipment. Kadiyala personally guaranteed the T2 mortgage.

¶ 7    As a part of the transaction, P-Three purchased from Therm Flo, and Therm Flo assigned to P-Three, its rights under the $253,000 Settlement Note. Additionally, P-Three purchased certain equipment from the Pressman defendants, as documented by a bill of sale, effective December 16, 2015. The bill of sale included a release (the Release), also dated December 16, 2015, whereby P-Three, through Kadiyala as its authorized signatory, "irrevocably and unconditionally release[d] and forever discharge[d]" the Pressman defendants from all claims "arising from, based upon, or related to" the Settlement Note that arose under Therm Flo.

¶ 8    Notwithstanding the 2015 Release, on January 4, 2021, P-Three filed its first four-count complaint against the Pressman defendants, the Therm Flo defendants, Netrix Building, LLC, and N+2, LLC (the Netrix defendants). As alleged in the complaint and attached as an exhibit, on February 28, 2019, P-Three sent a notice of default and demand letter to the Pressman defendants for payment on the $253,000 Settlement Note. The complaint also acknowledged that, in 2013, the

---

[1] Although not entirely clear from the record, the equipment which served as security for the Settlement Note was located at both the 1221 and the 1331 data center sites.

owner of the 1331 data center filed for bankruptcy, and its assets were purchased by the Netrix defendants.[2]

¶ 9    Between 2021 and 2022, P-Three filed a first, a second, and a third amended complaint. Notably, on February 3, 2022, upon learning that P-Three had filed a legal malpractice suit against it, Barber Law Offices, LLC, which had represented P-Three from the inception of this litigation, moved for and was granted leave to withdraw its representation. On April 1, 2022, Seiden Law Group entered its appearance on behalf of both P-Three and Kadiyala.

¶ 10    On March 15, 2023, P-Three filed its fourth amended complaint. Count I of the complaint sought a confession of judgment against the Pressman defendants for nonpayment on the Settlement Note. Count II alleged a breach of note, not only against the Pressman defendants, but against all defendants on the theory that they had formed a *de facto* partnership or joint venture rendering each liable on the note. Count III petitioned to pierce the corporate veil of those corporate entities controlled by the Pressman defendants and to hold the Pressman principals personally liable for the breach. Finally, count IV asserted a claim against the Netrix defendants for possession of and/or money damages for equipment located at the 1331 data center site.

¶ 11    The trial court ordered all defendants to respond to P-Three's fourth amended complaint by April 12, 2023, and to issue discovery. Beginning in April 2023, defendants filed their answers to the complaint, and each asserted therein the December 2015 Release as an affirmative defense. A copy of the Release was attached as an exhibit.

---

[2] In November 2013, Netrix acquired all of the equipment located at the 1331 data center site "free and clear of all liens, claims, encumbrances and interests." *In re Cyber Development Group Int'l, LLC,* No. 13-B-34214, (Bankr. N.D. Ill. Nov. 21, 2013).

¶ 12    In response to defendants' answers to the complaint, P-Three denied each defendant's affirmative defenses. Relying on Kadiyala's affidavit, P-Three asserted that the Release provided by defendants in support of their affirmative defenses was a forgery.

¶ 13    On September 15, 2023, following the close of discovery, the Therm Flo defendants filed a motion for summary judgment on counts I, II and III of the complaint, arguing that P-Three had released all claims against all defendants for payment on the note years before it had filed the initial complaint. Attached as an exhibit to the motion was the executed Release, along with e-mail correspondence showing that P-Three's counsel had sent two copies of the Release to Kadiyala, Kadiyala had signed and returned the Release, and Kadiyala had then transmitted the executed Release to P-Three's lender, T2, several days later. The Therm Flo defendants argued that P-Three's previously asserted forgery claim was baseless.

¶ 14    On September 25, 2023, the Pressman defendants also filed their motion for summary judgment on counts I, II and III. Shortly thereafter, on September 29, 2023, the Netrix defendants filed their motion, in which they joined the Therm Flo defendants' motion for summary judgment on count II of the complaint and independently sought summary judgment on count IV.

¶ 15    On October 19, 2023, P-Three filed its response to the motions. Therein, P-Three argued that summary judgment on counts I, II, and III of the complaint was inappropriate because a ruling on the motion would require the court to weigh conflicting evidence. P-Three asserted that "[d]ocumentary evidence can be construed in a way that indicates that [Kadiyala] lied" in the sworn statement in which he stated that he did not agree to the Release upon which the defendants relied in support of summary judgment.

¶ 16    On November 8, 2023, the circuit court granted all defendants' motions for summary judgment on all counts, finding the Release to be binding and enforceable. On December 7, 2023,

P-Three filed a motion for reconsideration, in which it argued that the Release should have been found to be unenforceable as there had been no consideration to support it.

¶ 17    On January 16, 2024, defendants filed a motion for Rule 137 sanctions against P-Three on the basis that Kadiyala's sworn forgery verifications were false.

¶ 18    On May 3, 2024, the circuit court denied P-Three's motion for reconsideration and granted defendants' motions for Rule 137 sanctions. In so doing, the court found that Kadiyala's forgery verifications were false and that discovery showed it had in fact signed and transmitted the Release. Shortly thereafter, Seiden Law Group, P.C., citing irreconcilable differences, withdrew its representation of both Kadiyala and P-Three.

¶ 19    P-Three appealed neither the trial court's grant of summary judgment, the denial of its motion for reconsideration, nor the sanctions award. However, on July 19, 2024, Kadiyala, proceeding *pro se*, filed a memorandum styled as a "Memorandum in Support of Plaintiff's Motion to Reconsider Sanctions." Defendants objected on the basis that Kadiyala was impermissibly attempting to represent P-Three, a corporate entity that was no longer represented by legal counsel. On August 8, 2024, the circuit court declined to hear Kadiyala's motion "because [Kadiyala was] not a proper party to this case and [had] not filed a petition to intervene."

¶ 20    On September 19, 2024, Kadiyala, then proceeding "as an individual," filed a formal "Request for Intervention" under section 2-408(a)(3) of the Code (735 ILCS 5/2-408(a)(3) (West 2024)).[3] In his request, Kadiyala asserted that he is the "sole manager for P-Three[,]" its "chief executive officer[,]" its "sole authorized representative[,]" and its "100% member[,]" and

---

[3] Although intervention is typically permitted only before judgment is entered, it may be granted postjudgment when necessary to protect the rights of the intervenor. *Anundson v. City of Chicago*, 44 Ill. 2d 491, 497 (1970); *People ex rel. Scott v. Illinois Protestant Children's Home, Inc.*, 95 Ill. App. 3d 552, 558 (1981).

therefore, he was entitled to intervene. As a basis for intervention, Kadiyala asserted that he would be "adversely affected by any judgment against [P-Three]."

¶ 21 On October 24, 2024, following argument by the parties, the circuit court denied Kadiyala's request for intervention. In its oral ruling, the court stated that "[i]ntervention as of right, if the application is timely and meets the criteria for inadequate representation intervention, and I think that's the one being evoked here, an applicant can intervene as of right by meeting the interest requirement, the benefit/suffer requirement, and the inadequate representation requirement." The court then ruled that Kadiyala had met none of the statutory requirements, and, as relevant here, that Kadiyala had not shown that he would benefit or suffer from the outcome of the litigation. Additionally, the court stated that Kadiyala did not meet any of the requirements for intervention as of right and that his position as guarantor on an unrelated mortgage was an insufficient basis to permit intervention.

¶ 22 On December 6, 2024, Kadiyala filed a motion for reconsideration. In the motion, Kadiyala argued that the court had (1) incorrectly applied the intervention by right statute as pursuant to section 2-408(a)(3), and (2) failed to execute its mandated obligations under the Illinois Code of Judicial Conduct.

¶ 23 On February 28, 2025, the circuit court denied the motion. In its "Corrected Opinion and Order," the court stated that it had considered Kadiyala's petition under all three sections of 2-408(a) and that the grant of summary judgment did not "dispose of any of P-Three's property" or "create any new debts, liabilities, or obligations for P-Three."

¶ 24 This appeal followed.

¶ 25                                    II. ANALYSIS

¶ 26    In his notice of appeal, Kadiyala indicates that he is appealing the circuit court's order entered on February 28, 2025. The court's February 28, 2025, order, captioned "Corrected Opinion and Order," denied Kadiyala's motion for reconsideration of the court's denial of his intervention request.

¶ 27    Consistent with the argument presented in his motion for reconsideration, here on appeal, Kadiyala first contends that the trial court erred as a matter of law by treating his motion to intervene as if it had been brought under section 2-408(a)(2) of the Code and applying an "adequate representation" standard, as opposed to analyzing the motion under section 2-408(a)(3), which does not impose that requirement. Secondly, he asserts that as a 100% owner, creditor, and guarantor of P-Three, [he] demonstrated a direct legal and financial interest sufficient to satisfy the mandatory intervention standard of [section] 2-408(a)(3)." As his third and final contention, Kadiyala argues that the trial court erred by failing to address credible and unrebutted allegations of ethical misconduct and discovery abuse raised in the motion to intervene, including forged filings and a request for sanctions and referral under Illinois Supreme Court Rule 137 and Canon 2.15(c) of the Code of Judicial Conduct.

¶ 28                              A. Standard of Review

¶ 29    Initially, we note that the parties disagree on the applicable standard of review. Kadiyala asserts that where the trial court's denial of intervention rests on statutory interpretation or legal misapplication, review is *de novo*. He maintains that, in this case, because the trial court erroneously based its denial on section 2-408(a)(2)'s "adequate representation" requirement, as opposed to section 2-408(a)(3)'s "adversely affected" requirement, the court misapplied the law. Thus, the standard of review, according to Kadiyala, is *de novo*. Defendants assert that the correct standard of review is abuse of discretion.

¶ 30    We have reviewed the court's initial oral ruling on Kadiyala's request to intervene, as well as its written order upon denial of Kadiyala's motion for reconsideration. In its initial ruling, the court first acknowledged that the statute permits intervention either as a matter of right or permissively. With respect to intervention as a matter of right, the court first, erroneously, stated that Kadiyala sought intervention based on inadequate representation but then proceeded to note that he had not satisfied any of the statutory requirements. Upon denial of Kadiyala's motion for reconsideration, the court expressly stated that it had considered Kadiyala's request for intervention under all three sections of paragraph 2-408(a) of the intervention statute.

¶ 31    Kadiyala is correct that *de novo* review applies either where the trial court misconstrues a statute (*Accettura v. Vacationland, Inc.*, 2019 IL 124285, ¶ 11 ("[t]he standard of review for questions of statutory construction is *de novo* review"); *Taylor v. Pekin Insurance Co.*, 231 Ill. 2d 390, 395 (2008)) or misapplies a statute (*Graves v. Cook County Republican Party*, 2020 IL App (1st) 181516, ¶ 36) (review of a motion to reconsider based on the trial court's alleged misapplication of existing law is *de novo*)). However, Kadiyala's claims that the court either misconstrued or misapplied the statute is belied by the record. Here, the court merely determined that based on the facts of the case, Kadiyala failed to show either inadequate representation under section 2-408(a)(2) or an adverse effect under section 2-408(a)(3).

¶ 32    "The decision to allow or deny intervention, whether permissively or as of right, is a matter of sound judicial discretion that will not be reversed absent an abuse of that discretion." *People ex rel. Birkett v. City of Chicago*, 202 Ill. 2d 36, 58 (2002); *Pate v. Wiseman*, 2019 IL App (1st) 190449, ¶ 16. As defendants correctly assert, the proper standard of review in this matter is abuse of discretion.

¶ 33                                    B. Discussion

¶ 34    Before proceeding to an analysis of the substantive issues, we must first address significant compliance issues that we observe to be present in Kadiyala's brief. Illinois Supreme Court Rule 341 (eff. Oct. 1, 2020) governs the form and content of appellate briefs. *McCann v. Dart*, 2015 IL App (1st) 141291, ¶ 12; *Voris v. Voris*, 2011 IL App (1st) 103814, ¶ 8. The rule requires an appellant's brief to set forth the appellant's arguments, the reasoning supporting those arguments, and citations to the relevant authorities and portions of the record. Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). Compliance with supreme court rules is mandatory. *In re Baby Boy*, 2025 IL App (4th) 241427, ¶ 57. Those rules carry the force of law and are interpreted under the same principles that govern statutory construction. *Id*.

¶ 35    A reviewing court is entitled to have issues clearly defined with pertinent authority cited and cohesive arguments presented; "it is not a repository into which an appellant may foist the burden of argument and research." *Obert v. Saville*, 253 Ill. App. 3d 677, 683 (1993). Nor is it this court's role or duty to serve as an advocate for a party or to comb the record in search of error. *Id*. "Arguments that do not comply with Rule 341(h)(7) do not merit consideration on appeal and may be rejected by this court for that reason alone." *Wells Fargo Bank, N.A. v. Sanders*, 2015 IL App (1st) 141272, ¶ 43.

¶ 36    Further, Kadiyala's *pro se* status does not excuse his noncompliance with supreme court rules. *Holzrichter v. Yorath*, 2013 IL App (1st) 110387, ¶ 78. A litigant's decision to proceed *pro se* carries with it the presumption that he is aware of and will comply with the applicable court rules and procedures. *Steinbrecher v. Steinbrecher*, 197 Ill. 2d 514, 517 (2001). A party's *pro se* status does not entitle them to more leeway. *Holzrichter*, 2013 IL App (1st) 110387, ¶ 78. As for appellate briefing, a *pro se* litigant is not entitled to more lenient treatment than a practicing

attorney. *Id*. Where a litigant fails to comply with the rules governing appeals, we have discretion to strike the brief and dismiss the appeal. *Id.* ¶ 77.

¶ 37 Initially, we note that Kadiyala misquotes the very statutory language of section 2-408(a)(3) on which his petition is based, substituting phrases that appear nowhere in the statute. Although we might be inclined to excuse the misquote as unintentional, our further review of Kadiyala's brief suggests otherwise. Even more concerning than Kadiyala's misquote of the applicable statute, several of Kadiyala's cited cases do not support the legal principles for which he cites them. Kadiyala attributes fabricated quotations and holdings to opinions that have nothing to do with intervention or section 2-408 of the Code. Additionally, a number of the cases to which Kadiyala cites appear not to exist at all. Set forth below are various features of Kadiyala's brief which we find untenable and which form the basis of our disposition of this appeal.

¶ 38 Kadiyala cites four cases in his brief that, based upon our research, do not exist, or in the vernacular of AI appear to be "hallucinated." We address each in turn. He first cites "*Greer v. Illinois Housing Development Auth*., 122 Ill. App. 3d 739, 744 (1st Dist. 1984)" and quotes the trial court as purportedly holding "that intervention must be granted when the judgment may impair the applicant's legally protected interest and no party adequately represents that interest." Notwithstanding that *Greer* does not actually exist, Kadiyala nonetheless maintains that, under *Greer*, the circuit court's refusal to investigate alleged misconduct by defendants after holding a full hearing on unsubstantiated accusations undermined the fairness of the proceedings and supports reversal. Kadiyala also contends that *Greer* supports the proposition that Illinois courts have repeatedly held that a trial court's failure to permit intervention under section 2-408(a)(3) is reversible when it results in procedural unfairness or impairs a party's ability to protect a legally cognizable interest. Despite our best efforts, we are unable to locate *Greer* as cited by Kadiyala.

¶ 39    Second, Kadiyala cites "*S.I.T.E. v. Board of Education of Township High School District No. 211*, 2020 IL App (1st) 191790, ¶ 19," another fictitious case, alleging that "the First District reversed a denial of intervention where the intervenor had enforceable obligations arising from a related contract, even though it was not a direct signatory to the agreement in dispute." According to Kadiyala, the court in *S.I.T.E.* found those obligations sufficient to establish a direct and legally protectable interest under § 2-408(a)(3). Kadiyala attempts to argue that the same result is warranted here because he is sitting in a much stronger "guarantor position."

¶ 40    Kadiyala additionally cites us to "*People ex rel. Hartigan v. St. James Dormitory Corp.*, 150 Ill. App. 3d 164, 171 (1st Dist. 1986)," yet another fictitious case. He then argues that the case stands for the proposition that "Illinois courts have long held that timeliness is not determined solely by the procedural stage of the case, but by whether intervention would prejudice the existing parties or unduly disrupt the litigation." Kadiyala claims that, in *Hartigan*, "the trial court permitted intervention more than two years after judgment, and held that where an intervenors interest 'would be adversely affected by the judgment,' intervention remained appropriate and that the trial court emphasized that '[t]imeliness must be determined from all the circumstances,' including whether 'existing parties would be prejudiced.' " Regrettably, our research reveals, yet again, that no such case exists.

¶ 41    Finally, Kadiyala includes in his table of points and authorities "*People v. Ortega*, 2018 IL App (1st) 162760, ¶ 36," which is also fictitious. Then, in the body of his brief, he cites "*People v. Ortega*, 209 Ill. 2d 354, 359 (2004)," for the proposition that "[a]n abuse of discretion occurs where the ruling is 'arbitrary, fanciful, or unreasonable, or where no reasonable person would take the view adopted by the trial court.' " Although *Ortega*, 209 Ill. 2d 354 (2004) is an actual case and the proposition Kadiyala asserts with regard to an abuse of discretion is accurate, because he

fails to accurately quote the language in that case and fails to cite to an actual case in his table of points and authorities, we again find that he has failed to comply with Rule 341.

¶ 42   Beyond Kadiyala's citation to apparent fictitious cases, Kadiyala cites to real cases but recites nonexistent quotes and holdings from those cases. For example, Kadiyala cites *People ex rel. Hartigan v. E&E Hauling, Inc*., 153 Ill. 2d 473, 496 (1992), multiple times and states that it stands for the proposition that "the right to intervene is absolute where the statutory requirements are met," that "Illinois courts recognize intervention by personal guarantors and insiders when their rights may be impaired by a judgment based on fraud or misrepresentation," and that "a trial court's failure to permit intervention under § 2-408(a)(3) is reversible when it results in procedural unfairness or impairs a party's ability to protect a legally cognizable interest." However, *Hartigan* involves neither intervention, section 2-408, nor any of the subjects for which Kadiyala cites it. Instead, *Hartigan* involves an action brought by the Illinois Attorney General against public construction contractors alleging fraud and violations of the Consumer Fraud Act arising from the contractors' misrepresentations regarding compliance with minority and women business enterprise requirements in their construction contracts. *Id.* at 480. The quotes and propositions Kadiyala attributes to this case do not exist within it and were wholly fabricated.

¶ 43   Kadiyala next cites *In re Estate of Zivin*, 2015 IL App (1st) 150606, asserting as its holding that "an erroneous intervention denial is not harmless where it prevents the intervenor from correcting material inaccuracies or supplementing the record to avoid prejudice," and "intervention may be granted even after judgment where needed to 'protect a direct interest that arose during litigation.' " Our review of *Zivin* reveals that intervention is nowhere addressed by the court in that case. Instead, *Zivin* involved a will contest in which this court considered whether Hebrew University of Jerusalem had standing to bring a breach of contract claim against a decedent's

estate. *Zivin*, 2015 IL App (1st) 150606, ¶¶ 1-2. The quotations and holdings Kadiyala attributed to this case do not exist within it and were clearly created out of whole cloth.

¶ 44    Kadiyala also cites *Bilyk v. Chicago Transit Authority*, 125 Ill. 2d 230 (1988), for the following propositions: (1) "the trial court's refusal to investigate or even acknowledge this substantiated misconduct, after holding a full hearing on unsubstantiated accusations against the opposing side, reflects a structural imbalance that undermined the fairness of the proceedings and supports reversal"; (2) "the trial court's denial of intervention is immediately appealable as a final judgment affecting a substantial right in a collateral proceeding, under Illinois Supreme Court Rule 301"; and (3) "a party 'has a right to intervene if he meets the requirements of section 2-408,' and that a Circuit Court's determination is reversible if it 'has applied impermissible legal criteria.' " *Bilyk* contains no such holdings or quotes. Instead, *Bilyk* concerned the constitutionality of section 27 of the Metropolitan Transit Authority Act, which immunized the Chicago Transit Authority from tort liability for failing to protect passengers from criminal acts of third parties. *Id.* at 234. The case discusses neither intervention, section 2-408, Rule 301, trial court misconduct, nor any of the other subjects for which Kadiyala cites it.

¶ 45    Kadiyala's citation to *People v. Smith*, 406 Ill. App. 3d 747 (2010), suffers from the same infirmities as do his citations to *Hartigan*, *Zivin*, and *Bilyk*. Supposedly quoting from *Smith*, Kadiyala states that "an appellate court cannot affirm on a ground not relied upon by the trial court." Not only does the purported quote not appear in the *Smith* opinion or carry a holding of equal effect, but it also misstates an established principle. Correctly stated, our court can affirm the trial court on any basis that appears in the record, regardless of whether the trial court relied upon such grounds. *Clanton v. Oakbrook Healthcare Centre, Ltd.*, 2022 IL App (1st) 210984, ¶ 54. Further, *Smith* is a criminal case concerning the admissibility of other crimes evidence in a

prosecution for aggravated criminal sexual abuse of a minor. *Smith*, 406 Ill. App. 3d at 748. It does not involve any issue relevant to this appeal.

¶ 46    Lastly, Kadiyala cites and quotes *In re Himmel*, 125 Ill. 2d 531, 541 (1988), for the following proposition: "Canon 2.15(c) obligates a judge to take 'appropriate action' upon receiving credible information that a lawyer has violated the Rules of Professional Conduct. Illinois courts have held that 'appropriate action' includes ensuring that knowingly false filings are addressed, particularly when a party continues to benefit from them." However, *Himmel* does not address Canon 2.15(c) or contain any such quotes. Rather, *Himmel* involved a disciplinary proceeding against an attorney who failed to report misconduct of a former attorney who had converted his client's settlement funds. *Id.* at 534.

¶ 47    In *Baby Boy*, 2025 IL App (4th) 241427, the appellate court found that the attorney "willfully" failed to comply with the supreme court rules by carelessly using AI to generate an appellate brief that cited eight nonexistent cases, rendering his conduct sanctionable. *Id*. ¶¶ 115, 129-130, 132. Notably, in *Baby Boy*, the non-compliant attorney openly admitted to using AI. Although not acknowledged by him, certain features in Kadiyala's brief, particularly citation to fictitious cases and irrelevant principles of law and misquoted text and quotations, give us reason to believe that he too may have relied on drafting tools, such as generative AI, that ultimately produced a non-compliant brief. Thus, we join our sister court in the Fourth District in offering the following admonishment:

> "[T]he Illinois Supreme Court AI policy explicitly permits the use of AI. However, attorneys must use AI tools wisely. We reiterate the supreme court's reminder that '[a]ll users must thoroughly review AI-generated content before submitting it in any court proceeding to ensure accuracy and compliance with legal and ethical obligations.' [Ill. Sup.

Ct., *Illinois Supreme Court Policy on Artificial Intelligence* (Jan. 1, 2025), https://ilcourtsaudio.blob.core.windows.net/antilles-resources/resources/e43964ab-8874-4b7a-be4e-63af019cb6f7/Illinois% 20Supreme% 20Court% 20AI% 20Policy.pdf [https://perma.cc/WCE6-WZE5]]. Flagrant and unprincipled use of AI without ensuring the accuracy of the generated response 'is an abuse of the adversary system' (Mata [v. Avianca, Inc., 678 F. Supp. 3d 443, 461 (S.D.N.Y. 2023)]), as it wastes court resources that would be better spent elsewhere." *Id.* ¶ 131.

¶ 48 Defendants, in their apparent attempt to respond to arguments presented in Kadiyala's brief, note that throughout Kadiyala's brief, "no fewer than three [cases cited by Kadiyala] stand for the propositions that he claims they do, and two of his cited cases do not exist at all, to say nothing of his brazen misquotation of the very statutory language of [s]ection 2-408(a)(3)." Defendants assert that Kadiyala's "fictitious, hallucinated citations" warrant sanctions under Illinois Supreme Court Rule 375.

¶ 49 Ordinarily, and particularly where the appellant's noncompliance has not substantially hindered our review, we have been inclined to proceed with a substantive review of the issues and to render a disposition on the merits. Ironically, in such cases, the appellant has either failed to cite to any authority or the authority to which he cites is distinguishable. Here, Kadiyala cites to authority, much of it fictitious, and still more of it immaterial. This court has a reasonable expectation that every litigant, *pro se* or otherwise, exercises due diligence in reviewing their briefs before submitting them to ensure that the arguments asserted therein have merit and the accompanying citations are accurate and reliable. *Baby Boy*, 2025 IL App (4th) 241427, ¶ 119.

¶ 50 Even accepting that Kadiyala's several and repeated missteps were unintentional, we find the violations too egregious to overlook. His conduct, not simply here in the appellate court, but

also over the long course of the trial court proceedings, is a clear abuse of the judicial system. In light of Kadiyala's failings, we are compelled to exercise the authority vested in this court pursuant to Rule 341 and strike Kadiyala's brief and dismiss this appeal. See *McCann*, 2015 IL App (1st) 141291, ¶ 20 (where the appellant failed to comply with Rule 341, the court, in the exercise of its discretion, struck the brief and dismissed the appeal).

### III. CONCLUSION

¶ 51    For the reasons stated, and in the exercise of our discretion, we strike intervenor-appellant's brief and dismiss the appeal. See *Pletcher v. Village of Libertyville Police Pension Board*, 2025 IL App (2d) 240416-U (unpublished order under Supreme Court Rule 23) (finding that striking the appellant's brief and dismissing the appeal was warranted where the *pro se* appellant cited nonexistent cases).

¶ 52    Appeal dismissed.